UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MARTIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MEDTRONIC, INC. et al.,<br><br>　　　　　Defendants. | No. 1:15-cv-00994-DAD-MJS<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 55) |

Plaintiff Michael Martin proceeds on his second amended complaint[1] in this action, alleging strict liability, negligence, and breach of express warranty, against defendants Medtronic, Inc., Medtronic Neuromodulation, Medtronic Puerto Rico Operations, Co., and Medtronic Logistics, LLC (collectively, "Medtronic" or the "Medtronic defendants"). (Doc. No. 51.)

Now before the court is defendants' motion to dismiss plaintiff's second amended complaint, filed on April 14, 2017. (Doc. No. 55.) On July 11, 2017, plaintiff filed his opposition. (Doc. No. 57.) On July 18, 2017, defendants filed their reply. (Doc. No. 58.) Defendants' motion came before the court for hearing on July 25, 2017. Attorneys Philip C. Bourdette and Kevin Haverty appeared on behalf of plaintiff Michael Martin, and attorneys Stephen J. Mackey and Rami N. Fakhouri appeared on behalf of the Medtronic defendants.

---

[1] This court previously granted defendants' motion to dismiss plaintiff's first amended complaint, with leave to amend. (Doc. No. 50.)

1

Having considered the parties' briefs and heard oral argument, and for the reasons stated below, the court will grant defendants' motion to dismiss.

## BACKGROUND

**A.     Plaintiff Michael Martin**

According to his second amended complaint, plaintiff was diagnosed with Lumbar Spondylosis and Lumbar Degenerative Disc Disease in 2004. (Doc. No. 51 ¶ 13.) On February 4, 2008, plaintiff was implanted with a Medtronic SynchroMed II implantable infusion system ("SynchroMed II"), consisting of a pump (model no. 8637-20, serial no. NGP315748H) and a catheter (model no. 8709SC, serial no. N132467011). (*Id.* ¶ 14.) In November 2008, during a trip to Arizona, plaintiff became seriously ill and was bedridden for two weeks. (*Id.* ¶ 15.) He sought medical attention when he returned home. (*Id.*) For the next five years, plaintiff underwent extensive diagnostic testing to determine the source of his illness; the testing left plaintiff with blurred vision, inability to walk, abdominal pain, and severe nausea, for four to five days a week. (*Id.* ¶ 16.) During this time, plaintiff experienced symptoms consistent with severe withdrawal-overdose cycles involving his opioid medication. (*Id.* ¶ 17.) Plaintiff alleges that defendants were aware that these symptoms were caused by his defective SynchroMed II device, even as plaintiff's medical providers were unable to determine the cause. (*See id.* ¶¶ 17–18.)

On July 12, 2013, after Medtronic agreed to allow for a pump replacement, plaintiff underwent a surgical procedure whereby his original SynchroMed II device was removed and replaced with a new SynchroMed II device (pump model no. 8637-20, serial no. NGP385091H; catheter model no. 8578). (*Id.* ¶¶ 19–20, 23.) During the procedure, the operating doctor discovered disintegration of material connecting the original pump and the catheter, as well as broken pieces and leakage of fluids around the pump-catheter connection site. (*Id.* at ¶ 21.) Plaintiff's medical records indicate that such leakage caused plaintiff's medication to flow directly into a pocket where the pump is located. (*Id.*) Plaintiff alleges he experienced pump-induced cycles of overdose and withdrawal: a temporary build-up of medication in the pocket caused overdose symptoms, followed by withdrawal symptoms as the pump emptied. (*Id.* at

/////

2

¶ 25.) Plaintiff alleges he suffered physical and emotional injury, including lost time with his children. (*See id.* ¶ 26.)

**B.      Regulatory and Legal Action Involving the SynchroMed II Device**

Plaintiff's claims against the Medtronic defendants are largely based on defendants' alleged "pattern of delayed responses to known safety violations" and disregard toward the "FDA's repeated warnings to comply with mandated manufacturing requirements." (*See id.* ¶ 1.) As alleged in plaintiff's second amended complaint, the SynchroMed II device is a Class III medical device, first approved through a pre-market approval ("PMA") process in 1988, by the U.S. Food and Drug Administration ("FDA"). (*Id.* ¶ 27.) In 2006, 2007, 2009, and 2012, the FDA issued warning letters concerning the manufacture of SynchroMed II devices and potential violations of federal regulations. (*See id.* ¶¶ 32, 34, 36, 40, Exs. 1, 3, 4, 6.)

In April 2013, the FDA determined that starting in September 2012, certain Medtronic catheters failed to comply with the approved specification, which allowed unintended disconnection of the catheter from the pump, failure of the catheter connector, leakage, or occlusion. (*See id.* ¶ 39, Ex. 5.) On June 3, 2013, a Class I recall was issued for certain SynchroMed II Sutureless Connector Intrathecal Catheters (model nos. 8709SC and 8731SC), and Sutureless Revision Kits (model nos. 8596SC and 8578), with a "use by" date prior to August 25, 2014. (*Id.* ¶ 45, *see also id.*, Ex. 7.)

In 2015, the federal government filed a complaint against Medtronic for repeatedly failing to correct violations related to SynchroMed II devices. (*See id.* ¶¶ 49–54.) On April 27, 2015, a consent decree was approved in the U.S. District Court for the District of Minnesota enjoining Medtronic from further manufacture and distribution of certain defective SynchroMed II devices. (*Id.* ¶ 55.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**DISCUSSION**

The Medtronic defendants move to dismiss plaintiff's second amended complaint on grounds that each of plaintiff's state law claims is preempted by the Medical Device Amendment ("MDA") to the federal Food, Drug, and Cosmetic Act ("FDCA"). Defendants also contend that plaintiff's second amended complaint fails to adequately allege facts to support plausible claims for relief, even if such claims are not preempted. The court addresses each of these arguments in turn below.

**A.     Federal Preemption**

Under the Supremacy Clause, Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2. Preemption may be express or implied. *Shaw v. Delta Airlines*, 463 U.S. 85, 97 (1983) (citations omitted); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007).

Express preemption occurs if a federal statute explicitly indicates that federal law is to supersede state law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (observing that "the task of statutory construction must in the first instance focus on the plain wording of the

4

clause, which necessarily contains the best evidence of Congress' preemptive intent"); *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2008). As the court previously noted, the MDA and its implementing regulations contain provisions expressly preempting certain state or local requirements that are "different from, or in addition to," an existing FDA requirement relating to a particular medical device. *See* 21 U.S.C. § 360k(a); 21 C.F.R. § 808.1(d). (*See also* Doc. No. 50 at 7–9 (explaining the MDA's regulatory regime).) For a state cause of action to be expressly preempted under the MDA, two conditions must be met. First, the FDA must have established specific requirements relating to a particular medical device at issue. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496 (1996) (noting that state law will be preempted "only to the extent that the FDA has promulgated a federal 'requirement'"); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1117 (9th Cir. 2013). The PMA process under the MDA imposes such a device-specific requirement. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 322–23 (2008). Second, the state law claim must rely on a requirement that is "different from, or in addition to," the FDA's requirement, and must relate to the device's safety or effectiveness. *See id.* at 323; *Lohr*, 518 U.S. at 500; *Perez*, 711 F.3d at 1117; *see also Papike v. Tambrands Inc*, 107 F.3d 737, 741 (9th Cir. 1997) (holding that state common law claims can also impose "requirements" for preemption purposes). Conversely, the MDA does not preempt a "parallel" state law claim premised on a violation of FDA regulations. *See Riegel*, 552 U.S. at 330; *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1228 (9th Cir. 2013). Allegations that a defendant failed to comply with the FDA's Current Good Manufacturing Practices ("CGMPs") may support a parallel state law claim, but such noncompliance must be tied to the particular device at issue. *See, e.g.*, *Frere v. Medtronic, Inc.*, No. EDCV 15-02338-BRO (DTBx), 2016 WL 1533524, at *7 (C.D. Cal. Apr. 6, 2016) (finding that while "alleged violations of CGMPs alone may be insufficient to establish a parallel claim," plaintiff's claim was not expressly preempted where she cited the FDA's investigation of defendants' CGMP violations and alleged her device was manufactured during a time defendants were cited for failure to comply with CGMPs).

Implied preemption, by contrast, occurs if congressional intent to preempt is "implicitly contained in [the] structure and purpose" of a federal law. *Montalvo*, 508 F.3d at 470 (quoting

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). The MDA impliedly preempts claims that are based solely on violations of federal requirements, and not on state law requirements that could exist independently of any federal rules. *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 352–53 (2001); *Perez*, 711 F.3d at 1119; *cf. Lohr*, 518 U.S. at 500–502 (finding no preemption of plaintiff's state law claims because they arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements); *Stengel*, 704 F.3d at 1230–33 (finding that a state law negligence claim escaped implied preemption because it could exist separately from any federal requirement to report adverse events to the FDA). Implied preemption under the MDA is rooted in the intent of Congress to vest exclusive authority over enforcement of the FDCA's provisions in the federal government. *See* 21 U.S.C. § 337(a); *accord Buckman*, 531 U.S. at 352; *Perez*, 711 F.3d at 1119.

At bottom, there is a "narrow gap" through which a plaintiff's state law claim must fit in order to escape preemption by the FDCA: "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez*, 711 F.3d at 1120 (emphases in original) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)). In his second amended complaint, plaintiff has attempted to thread this narrow gap while still alleging facts sufficient to state a plausible claim for relief.

        1.      <u>Manufacturing Defect Claims</u>

Plaintiff first alleges, in both strict liability and negligence causes of action, that his original SynchroMed II device suffered from a manufacturing defect. The MDA established a PMA process, which imposes comprehensive safety requirements applicable to Class III medical devices such as the SynchroMed II device at issue in this case. *See Riegel*, 552 U.S. at 322. California law, meanwhile, imposes general duties of care on medical device manufacturers in manufacturing their products. *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1110 (1996). "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human

being." *Id.* (quoting *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 62 (1963)). In addition, manufacturers are subject to liability for the manufacture of defective products under general principles of negligence. *See Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 999–1000 (1991).

Here, plaintiff alleges that defendants' failure to properly manufacture SynchroMed II devices in accordance with federal requirements also constituted a violation of California law. (*See* Doc. No. 51 ¶¶ 61–62.) As this court previously concluded, plaintiff's claims are not subject to express preemption to the extent they are based on violations of federal requirements resulting from the PMA process. (*See* Doc. No. 50 at 11.) Plaintiff's second amended complaint now also alleges facts from which it could be inferred that the SynchroMed II device was implanted in plaintiff during a time when defendants were not in compliance with CGMPs. (*See* Doc. No. 51 ¶¶ 32–42.) Specifically, the FDA warned Medtronic in 2006 and 2007 that it may be manufacturing adulterated or misbranded products in breach of the FDCA as a result of these alleged violations. (*See id.* ¶¶ 32–35, Exs. 1, 3.) Thus, plaintiff's manufacturing defect claims as alleged in his second amended complaint, which are based on violations of federal requirements, are not expressly preempted by the MDA. *See, e.g.*, *Frere*, 2016 WL 1533524, at \*7; *De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1094 (N.D. Cal. 2016) ("The Form 483s offer plausible support for the inference that [defendant] produced some adulterated devices, even if not conclusive.").

The court also declines to conclude that either of plaintiff's manufacturing defect claims as alleged in the second amended complaint is impliedly preempted by the MDA. While plaintiff's claims rely on Medtronic's alleged failures to comply with federal CGMPs, he now alleges that such instances of noncompliance independently constitute breaches of Medtronic's duties under California's strict liability and negligence laws. (*See* Doc. No. 51 ¶¶ 61, 90.)

Accordingly, the court concludes plaintiff's manufacturing defect claims, brought by way of both strict liability and negligence causes of action in his second amended complaint, are not preempted by the FDA's regulations relating to SynchroMed II devices.

/////

### 2. Failure to Warn Claim

Plaintiff's second amended complaint also alleges a strict liability cause of action based on a failure to warn of the dangers associated with plaintiff's original SynchroMed II device. The MDA requires medical device manufacturers seeking PMA to disclose certain safety risks to the FDA, and imposes a continuing duty on PMA holders to report individual adverse events associated with those medical devices. *See* 21 U.S.C. § 360i(a); 21 C.F.R. § 803.10(c); *see also Stengel*, 704 F.3d at 1226–27 (explaining the PMA process and observing that, after approval, manufacturers are required to report adverse events to the FDA). California law imposes a general duty of reasonable care on manufacturers, and provides a strict products liability cause of action for failure to warn. *See Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 64–65 (2008); *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 13 (1992) ("A manufacturer is strictly liable for injuries caused by a product that is . . . distributed without adequate instructions or warnings of its potential for harm."). A failure to warn claim brought under state law will not be expressly preempted by the FDA so long as it "demand[s] the same conduct of manufacturers that federal law [does]." *Frere*, 2016 WL 1533524, at *5; *see also Stengel*, 704 F.3d at 1233 (holding that a state law negligence claim based on failure to warn was not expressly preempted because the "state-law duty parallel[ed the] federal-law duty" to report events to the FDA).

Here, plaintiff's second amended complaint clarifies that its failure to warn claim is premised on defendants' failure to report adverse events associated with the SynchroMed II device to the FDA, in accordance with requirements under the MDA—rather than a failure to report such events directly to medical providers and consumers. (*See* Doc. No. 51 ¶¶ 75–77, 82.) Accordingly, the court now concludes that this claim as alleged in plaintiff's second amended complaint is not preempted under the MDA.

### 3. Breach of Express Warranty Claim

Finally, plaintiff alleges a breach of express warranty claim. State law claims based on breach of express warranty can survive preemption under the MDA only to the extent that they seek to impose liability for misleading warranties voluntarily made outside the label. *See De La Paz*, 159 F. Supp. 3d at 1097–98 ("[T]he only claims for breach of the express warranty that have

survived preemption are those that went 'beyond' statements approved by the FDA."); *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1181 (C.D. Cal. 2013) (noting that such claims are not preempted because where a defendant voluntarily makes misleading warranties outside the label, a plaintiff "is not imposing any requirement different from or additional to what federal law already requires").

Here, plaintiff alleges only that defendants expressly warranted that the pump and catheter in plaintiff's SynchroMed II device were safe and fit for use. (Doc. No. 51 ¶¶ 112–13.) Just as this court previously concluded, plaintiff's state law claim for breach of express warranty, as pled in his second amended complaint, is expressly preempted under the MDA because it fails to plausibly allege that defendants breached any warranty made beyond FDA-approved statements. *See De La Paz*, 159 F. Supp. 3d at 1098 ("Any claim for breach of express warranty based on [FDA-approved] statements would require a determination that [defendant] did not conform to the descriptions approved by the FDA. Such claims are preempted."). Moreover, plaintiff has failed to specifically allege whether defendants' purported liability is based on a deviation from the FDA's requirement, rather than misleading voluntary off-label warranties. As a result, plaintiff's breach of express warranty claim is preempted under the MDA.

**B.     Sufficiency of Pleadings**

To the extent the court has concluded that plaintiff's claims are not preempted under federal law, however, the court also finds that plaintiff has failed to allege facts sufficient to support plausible claims for relief.

    1.  <u>Manufacturing Defect & Failure to Warn Claims</u>

Generally speaking, in order to state a parallel claim premised on a violation of FDA regulations, a plaintiff must allege (1) the violation of a specific federal requirement applicable to the device, and (2) a causal nexus between the violation and the alleged injury. *See, e.g.*, *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300–02 (11th Cir. 2011); *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1215 (N.D. Cal. 2014); *Hawkins v. Medtronic, Inc.*, No. 1:13-cv-00499-AWI-SKO, 2014 WL 346622, at *5 (E.D. Cal. Jan. 30, 2014); *Knoppel v. St. Jude Med., Inc.*, No. SACV 13-383 JVS (ANx), 2013 WL 12116393, at *3 (C.D. Cal. Sept. 24, 2013). To state a

manufacturing defect claim by way of either a strict products liability or a negligence cause of action, a plaintiff must allege, and eventually prove, a particular manufacturing defect which caused injury to the plaintiff. *See County of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (2006) (describing the elements of a strict products liability cause of action); *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989) (reciting the traditional elements of negligence). Likewise, "[t]o state a claim for strict products liability for failure to warn, a plaintiff must allege that the defendant failed to adequately warn of a known or knowable risk where that failure caused the plaintiff's injuries." *Hawkins*, 2014 WL 346622, at *13 (citing *Carlin*, 13 Cal. 4th at 1112).

Plaintiff's second amended complaint, however, fails to identify a particular manufacturing defect violative of the MDA that caused plaintiff's injury. As he did in his first amended complaint, plaintiff again merely points to a series of regulatory and legal actions taken by the FDA between 2006 and 2015 (*see* Doc. No. 51 ¶¶ 32–56), involving noncompliance with the FDA's CGMPs. But the allegations of the second amended complaint fail to link any of these actions or instances of noncompliance to plaintiff's particular SynchroMed II device, originally implanted in plaintiff in 2008. For example, the FDA sent Medtronic warning letters in 2006 and 2007, but neither of these letters references the models or components of plaintiff's device that he alleges were defective. (*See id.* ¶¶ 32, 34, Exs. 1, 3.) The FDA also sent other warning letters in 2009 and 2012, after plaintiff's original device was implanted. (*See id.* ¶¶ 36, 40, Exs. 4, 6.) Those letters also fail to identify the specific models or components of plaintiff's device. Furthermore, neither the June 2013 recall nor the April 2015 consent decree reference or pertain to the models or components linked to plaintiff's original SynchroMed II device. (*See id.* ¶¶ 45, 55, Ex. 7.) Instead, plaintiff appears to proceed on a generalized theory that documented noncompliance with respect to *certain* models of, or issues involving, the SynchroMed II device necessarily rendered *plaintiff's* original device also defective. Simply put, the court cannot plausibly infer a link between these documented incidents and plaintiff's original SynchroMed II device. Nor can it infer a causal connection between any alleged manufacturing defect and plaintiff's injury. *See, e.g.*, *De La Paz*, 159 F. Supp. 3d at 1095 ("[Plaintiff's] failure to allege a

10

causal link between any adulteration of [defendants'] device and her injuries is fatal to her manufacturing-defect claims."); *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) (finding "impermissibly conclusory and vague" allegations stating that "the [device] contained a manufacturing defect in that it was manufactured in such a manner that impurities, residues, and bacteria remained on the [device] in violation of the FDA standards and requirements and in violation of the manufacturing processes and design approved by the FDA"). Thus, while plaintiff's manufacturing defect claims may not be preempted, they must be dismissed for failure to sufficiently state a claim.

Similarly, plaintiff's failure to warn claim also lacks a sufficient factual basis from which to infer causation or liability. As noted above, plaintiff's failure to warn claim escapes preemption only to the extent it is premised on Medtronic's failure to report certain adverse events to the FDA. However, in his second amended complaint, plaintiff has not alleged facts identifying the nature of any such adverse events or addressing how any such failure to report ultimately caused plaintiff's injury. Thus, the court cannot draw a plausible inference that in the absence of such a failure to report, the FDA would have alerted plaintiff's doctors or plaintiff himself such that plaintiff would have refused implantation of his original SynchroMed II device. *See Hawkins*, 2014 WL 346622, at *8 ("Plaintiff generally alleges that Defendants failed to report adverse events to the FDA. He also generally alleges that these failures caused or contributed to his injuries. What is not alleged is any factual content that would support the causal nexus."). Because plaintiff fails to plead sufficient facts to support liability stemming from a failure to warn, this claim must also be dismissed.

2. <u>Breach of Express Warranty Claim</u>

As the court concluded above, plaintiff's breach of express warranty claim is preempted under the MDA. Even assuming plaintiff's claim were not to be preempted, his second amended complaint again falls far short of pleading facts sufficient to raise an inference of liability with respect to such a claim. To state a claim for relief for a breach of express warranty, plaintiff must allege that: (i) defendants made an "affirmation or promise" or provided a "description" of the device; (ii) the statement was "part of the basis of the bargain;" and (iii) defendants breached the

11

warranty. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (citing Cal. Com. Code § 2313(1)). "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Cal. Com. Code § 2313(2). Plaintiff's second amended complaint fails to allege the contents of any express warranty made by defendants. Moreover, it remains unclear from the allegations of the second amended complaint whether the alleged warranty contained affirmations of fact sufficient to form the basis of an express warranty claim, or whether they simply reflected opinions or commendations regarding plaintiff's SynchroMed II device. Plaintiff also fails to plead any non-conclusory allegations as to how any warranties were made to him or his physician, and whether any alleged warranties were relied upon by either. *See Hammarlund v. C.R. Bard, Inc.*, 2:15-cv-05506-SVW-JEM, 2015 WL 5826780, at *5 (C.D. Cal. Oct. 2, 2015). As a result, plaintiff's express warranty claim must be dismissed, in the alternative, for failure to state a claim.

**C.    Leave to Amend**

The undersigned has carefully considered whether plaintiff should be granted further leave to amend. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1988); *see also Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court need not allow futile amendments). Here, plaintiff has, in the court's view, been unable to cure all of the deficiencies noted in the order dismissing his first amended complaint. At the hearing on this motion to dismiss, plaintiff's counsel indicated that plaintiff had alleged all of the available facts in support of his claims and did not argue for the granting of further leave to amend. The court has concluded, as set forth above, that the allegations of the second amended complaint fail to state a plausible claim for relief. Accordingly, the undersigned concludes that the granting of further leave to amend would be futile.

/////

/////

/////

**CONCLUSION**

For the reasons set forth above,

1. Defendants' motion to dismiss plaintiff's second amended complaint (Doc. No. 55) is granted;
2. Plaintiff's second amended complaint (Doc. No. 51) is dismissed with prejudice; and
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **October 13, 2017**

UNITED STATES DISTRICT JUDGE